**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SECURITIES AND EXCHANGE COMMISSION,**

          **Plaintiff,**

-vs-                                        **Case No. 6:05-cv-1880-Orl-31KRS**

**ROANOKE TECHNOLOGY CORP.,**
**DAVID L. SMITH, JR., THOMAS L.**
**BOJADZIJEV, BARRETT R. CLARK, &**
**SUSSEX AVENUE PARTNERS, LLC,**

          **Defendants.**

## ORDER

This matter comes before the Court after a hearing on the motion to dismiss and supporting memorandum filed by Defendant Barrett R. Clark ("Clark") (Doc. 43, Doc. 44), the response (Doc. 52) filed by the Plaintiff Securities and Exchange Commission ("SEC"), and Clark's reply (Doc. 55). Clark seeks dismissal of three fraud counts on the grounds that they fail to state a claim against him under Rule 12(b)(6) or that they fall short of the specificity required of a fraud claim by Rule 9(b). (Doc. 43 at 1).

**I.    Background**

The following allegations, taken from the Amended Complaint (Doc. 30), are accepted as true for purposes of resolving this motion to dismiss. *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n.2 (1977).

Defendant David L. Smith, Jr. ("Smith"), as CEO and president of Defendant Roanoke Technology Corp. ("Roanoke"), engaged in a so-called "pump and dump" scheme involving his company's stock. Smith published misleading news releases to increase the stock's value. (Doc. 30 at 1). He also used both Clark and Defendant Thomas L. Bojadzijev ("Bojadzijev") to sell Roanoke stock. (Doc. 30 at 1). In exchange for their (purported) consulting services, Clark and Bojadzijev received shares of Roanoke stock. (Doc. 30 at 2). Clark and Bojadzijev would sell the stock, keep a portion of the proceeds, and return the remainder to Smith in the guise of a loan. (Doc. 30 at 2).

Roanoke issued the stock to Clark by way of Form S-8 registration statements. (Doc. 30 at 1). Stock issued via a Form S-8 (henceforth, "Form S-8 stock") may be used to pay for certain types of consulting services, but it may not be used simply to raise capital. In his consulting agreements with Smith and Roanoke, Clark agreed to provide certain management and organizational services, but in actuality he provided primarily shareholder communication services, which are not among the types of consulting services for which one may properly receive payment in the form of Form S-8 stock (Doc. 30 at 11). Smith signed all of the Form S-8 registration statements, which falsely asserted that Clark was providing "consulting" services to Roanoke. (Doc. 30 at 10).

To disguise the transfer of proceeds of the stock sale, Clark had his company – Defendant Sussex Avenue Partners, LLC ("Sussex) – enter into hundreds of thousands of dollars' worth of sham promissory notes with Smith. (Doc. 30 at 11). In an effort to avoid SEC reporting requirements, some of the Roanoke stock that Clark was to resell was issued to Clark's girlfriend or an employee of Sussex. (Doc. 30 at 11-12). On several occasions, these efforts failed, and

Clark's holdings of Roanoke stock exceeded the percentages that triggered the reporting requirements. (Doc. 30 at 12). Despite this, Clark never filed the required federal registration statements. (Doc. 30 at 12).

In the Amended Complaint, the SEC alleges (*inter alia*) that Clark committed fraud in violation of the following: Section 17(a)(1) of the Securities Act (Count II); Section 10(b) of the Exchange Act and Rule 10b-5 (Count III); and Sections 17(a)(2) and (3) of the Securities Act (Count VII).

## II. Standards

### A. Motion to Dismiss

In ruling on a motion, the Court will take the complaint's allegations as admitted by the Defendant and will liberally construe them in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The Court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also U.S. ex rel. Carroll v. JFK Med. Ctr.,* 2002 WL 31941007, at *2 (S.D. Fla. Nov. 15, 2002) ("Court need not accept facts that are internally inconsistent, facts that run counter to facts which the Court may take judicial notice of, conclusory allegations, unwarranted deductions or mere legal conclusions"); *Harding v. Winn-Dixie Stores, Inc.*, 907 F. Supp. 386, 389 (M.D. Fla. 1995) ("the court will not accept conclusory allegations or legal conclusions masquerading as factual conclusions").

### B.     Section 10(b) and Rule 10b-5

Section 10(b) of the Exchange Act makes it unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe. *SEC v. Zandford*, 535 U.S. 813, 819 (2002). "Rule 10b-5, which implements this provision, forbids the use, 'in connection with the purchase or sale of any security,' of 'any device, scheme, or artifice to defraud' or any other 'act, practice or course of business' that operates ... as a fraud or deceit.'" *Id.* (quoting 17 CFR § 240.10b-5). Rule 10b-5 also proscribes, among other things, the making of any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b-5 (2004).

To state a claim for securities fraud under these provisions, a plaintiff must allege that the defendant made material misstatements or omissions as to which he had a duty to speak, or used a fraudulent device, with scienter, in connection with the purchase or sale of securities. *See*, *e.g.*, *SEC v. Monarch Funding Corp.,* 193 F.3d 295, 308 (2nd Cir. 1999); *Ross v. Bank South, N.A.*, 885 F.2d 723, 728 (11th Cir. 1989).

### C.     Section 17(a) of the Securities Act

Section 17(a) of the Securities Act provides that

It shall be unlawful for any person in the offer or sale of any securities ... by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly

(1) to employ any device, scheme, or artifice to defraud, or

> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

A claim under Section 17(a) of the Securities Act requires essentially the same elements as a claim under Section 10(b) of the Exchange Act and Rule 10b-5, except that there is no scienter requirement for claims under Section 17(a)(2) or (3). *Monarch Funding* at 308.

### D. Rule 9(b) of the Federal Rules of Civil Procedure

Rule 9(b) requires that "in all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). However, intent may be averred generally. *Id.* The particularity requirement applies to securities fraud claims brought by the SEC, just as it does to such claims brought by private plaintiffs. *See, e.g.*, *SEC v. Druffner*, 353 F.Supp.2d 141, 148 (D.Mass. 2005).

## III. Legal Analysis

### A. Misrepresentations and omissions

Clark contends that the SEC has failed to allege that he made a false or misleading statement of a material fact, or that he omitted any material facts that he had a duty to disclose. (Doc. 44 at 7). He points out that, while the Amended Complaint refers to numerous alleged falsehoods and misrepresentations, such as misleading press releases and SEC filings, none are attributed to him, and there are no allegations that he knew or should have known of them or their falsity. (Doc. 30 at 7). In addition, he contends that the SEC

fails to specify any facts he should have shared with prospective investors, and never explains the source of his duty to do so.  (Doc. 30 at 7-8).

The SEC agrees that it has not alleged that Clark had any responsibility in regard to the misleading press releases.  (Doc. 52 at 14).  But the SEC contends that it has properly alleged that Clark participated in an illegal kickback scheme with Smith, and that Clark had a duty to disclose that scheme and the true nature of the money the duo were paying themselves under the guise of issuing Form S-8 stock.  (Doc. 52 at 14).  However, the SEC does not specify – in either the Amended Complaint or its memorandum – the facts that Clark failed to disclose or the circumstances under which he should have done so.

In its memorandum, the SEC does make a general assertion that Clark "either had a duty to disclose the kickback scheme to investors or not engage in a kickback scheme at all." (Doc 52 at 17).  The SEC does not identify any portion of the Amended Complaint where it makes this allegation.  Moreover, at least in this case, an assertion that the Plaintiff was required to disclose "the kickback scheme" is too vague to permit proper analysis.  The kickback scheme described in the Amended Complaint was made up of a number of different factual elements, and the Court cannot tell which facts the SEC contends Clark was obliged to reveal.  For example, should Clark have disclosed that some of Roanoke's press releases were misleading?  That he was not providing all of the services detailed in his consulting agreement with Roanoke?  That at least some of the services he *was* providing were not a proper basis for receipt of Form S-8 stock?  On this record, the Court cannot tell.  As such, the Court cannot determine whether any particular allegation that Clark omitted a material fact is adequately pled in the Amended Complaint, and whether the Amended

-6-

Complaint includes allegations that, if proven, would demonstrate that Clark had a duty to disclose that fact.

The SEC also argues that a defendant's duty to disclose "depends on the particular facts of each case and is thus not proper grounds for a motion to dismiss." (Doc. 52 at 14). In support, the SEC cites to *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986). In that case, the court did indeed state that "a defendant's omission to state a material fact is proscribed only when the defendant has a duty to disclose. Such a duty may exist 'where the law imposes special obligations, as for accountants, brokers, or other experts, *depending on the circumstances of the case*.'" *Id.* at 1043 (emphasis added) (quoting *Woodward v. Metro Bank*, 522 F.2d 84, 97 n.28 (5th Cir. 1975)). Contrary to the SEC's implication, however, the *Rudolph* court did not decline consideration of those circumstances, instead stating that its task at the motion to dismiss stage was "to determine whether plaintiffs could, consistent with their allegations, prove facts under which we would hold that [the defendant] had such a duty." *Id.* at 1045.

### B.    Materiality

In the Rule 10b context, an omitted fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). Clark contends that the SEC has failed to set forth, with particularity, how the existence of the S-8 scheme was "material" to the hypothetical reasonable investor. More specifically, he argues that a reasonable investor

(as opposed to the SEC) would not care that Roanoke was issuing stock to Clark in exchange for services other than those listed as proper on Form S-8. (Doc. 44 at 9-10).

The SEC argues, correctly, that it has alleged that the stock was not provided to Clark in exchange for *bona fide* services. It does not, however, explain what it means by *bona fide* in this context – *i.e.*, whether it uses this phrase to mean "honest" or "actual" or something like "approved by the SEC for exchange with Form S-8 stock". As Clark points out, it is hard to see how a reasonable investor would care that the services Clark provided to Roanoke did not fall into the proper category for Form S-8 stock, so long as he did in fact provide a corresponding amount of services to the company.

The SEC contends that a reasonable investor "obviously would attach importance to the omission that Clark and Smith were engaged in a kickback scheme." Without a more specific allegation, this is not so obvious as the SEC would have it. Unlike the situation in, for example, *SEC v. Scott*, 565 F.Supp. 1513 (S.D.N.Y. 1983) – which the SEC cites in support of its argument here – the kickbacks of stock sale proceeds from Clark to Smith do not appear to raise any conflict of interest issues. *See id.* at 1527 (stating that "[o]bviously an investor would consider an apparent kickback agreement between the issuer and the underwriter as material information since such an agreement raises an inherent conflict of interest and undermines the independence of the underwriter's investment judgment."). While it is clearly possible that an omitted fact might be material even if it does not directly impact the value of the company's stock, the SEC has failed to show that such is the case is here. Instead of explaining *how* the omitted information was material – i.e., *why* the reasonable investor would have wanted to know about it – the SEC has simply stated that the

information was material *because* the reasonable investor would have wanted to know about it. This is not sufficient.

**C.     Scienter**

Finally, Clark argues that the SEC has failed to make proper allegations of scienter with regard to Counts II and III. (Doc. 44 at 14). The Supreme Court has defined scienter as the "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 192 (1976). A showing of severe recklessness satisfies the scienter requirement. *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). Severe recklessness is "limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* (internal quotation omitted).

In response, the SEC presents a series of allegations from the Amended Complaint that it contends give rise to a "strong inference" of "conscious misbehavior." The initial problem is that "conscious misbehavior" is not part of this circuit's scienter standard. In *Bryant v. Avado Brands*, 187 F.3d 1271 (11th Cir. 1999), the court noted that two other courts of appeals – the Second and Third – permitted plaintiffs to allege the requisite "strong inference of scienter" by showing "a motive and opportunity to commit fraud or by showing circumstantial evidence denoting either recklessness or conscious misbehavior."[1]  However,

---

[1] So far as this Court's research has revealed, *Avado Brands* is the only reported decision in which the United States Court of Appeals for the Eleventh Circuit has employed the term "conscious misbehavior".

the *Avado Brands* court adopted a different scienter standard – that employed by the Sixth Circuit – that "a securities fraud plaintiff must plead scienter with particular facts that give rise to a strong inference that the defendant acted in a severely reckless manner." *Id.* at 1287.

With the proper standard ascertained, the Court turns to the following allegations from the Amended Complaint, which the SEC contends meet the pleading requirements for scienter:

> The Commission alleges that from February 2003 through March 2004, Roanoke issued 187 million shares of Roanoke stock to Clark through a series of Form S-8 registration statements. (Amended Complaint at ¶ 41). The statements falsely represented that the shares were issued to Clark as compensation for "consulting" services, but in reality Clark provided little if any *bona fide* services to Roanoke. (*Id.* at ¶¶ 42, 45). The services Clark provided to the company were primarily shareholder communication services which are prohibited activities under a Form S-8 registration statement and were intended to mask Smith and Clark's primary intent to liquidate Roanoke shares for their mutual gain. (*Id.* at ¶ 45). Within days after receiving Roanoke S-8 stock, Clark: 1) sold the shares; 2) wired the sales proceeds to his and Sussex's bank accounts; and 3) then wired funds from those bank accounts to Smith's bank account or provided Smith with a cashier's check. (*Id.* at ¶ 46). In total, Clark gradually sent $645,450 to Smith under the guise of loan installments and kept approximately $850,000 in illicit proceeds in various Sussex accounts for himself. (Amended Complaint ¶ 48). This capital raising scheme was in direct contradiction to the statements made in the S-8 statement.

(Doc. 52 at 12).

The Court finds that these allegations do not satisfy the scienter pleading requirements. There is no allegation that Clark knowingly or recklessly acted with the intent to deceive, manipulate, or defraud, and none of these allegations provide circumstantial evidence that he did so. Half of the allegations relate to the improper issuance of Form S-8 stock by Roanoke to Clark, but there is no allegation that Clark knew anything about the

circumstances under which the stock was issued or that he was responsible for its issuance. The remaining allegations cited by the SEC in its response revolve around the kickbacks of the stock sale proceeds. Such kickbacks, standing alone, are not sufficient to raise a strong inference that Clark intended to deceive, manipulate or defraud any investor.

**IV.    Conclusion**

For the reasons discussed above, Defendant Barrett R. Clark's Motion to Dismiss (Doc. 43) is **GRANTED** and Counts II, III, and VII of the Amended Complaint are **DISMISSED** as they relate to Clark. The SEC may file an amended complaint not more than twenty days from the issuance of this order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 24, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Unrepresented Party